## Louisville & Nashville Railroad Company v. Hamblen.

(Decided December 16, 1924.)

### Appeal from Kenton Circuit Court.

1. **Master and Servant—Foreman Not Grossly Negligent in Directing Crew to Pick up End of Timber and Lay it on Trestle.**—Foreman was not grossly negligent in directing his crew to pick up one end of a heavy timber and lay it on a trestle, where he understood that each of them was familiar with the work, and understood exactly how work should be done, and he gave no directions which would have warranted them in changing that method.

2. **Master and Servant—Risks Incident to Unusual Method of Doing Work Assumed.**—If employes ordered by foreman to pick up heavy timber did not do so in manner usually employed, they assumed all risks of danger incident to the method employed.

3. **Master and Servant—Servant Not Entitled to Recover for Injuries Unless Foreman was Guilty of Gross Negligence Proximately Causing Injury.**—Servant was not entitled to recover for injuries sustained, though his fellow servants may have been grossly negligent, unless his foreman, who directed work, was also guilty of gross negligence, which was proximate cause of injury; servant assuming all ordinary risks which did not arise out of superior's negligence.

S. D. ROUSE and WOODWARD & WARFIELD for appellant.

GRAZIANA & ROOT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

This appeal is from a judgment of the Kenton circuit court in favor of appellee Hamblen against the Louisville & Nashville Railroad Company for $2,750.00 for personal injury alleged to have been suffered by ap-

pellee Hamblen by reason of the gross negligence of appellee's superior in the service of the railroad company. In the petition it is averred:

"Plaintiff says that by the gross and wanton carelessness and negligence of the defendant, its officer and agent in the presence of and under the directions and orders of the foreman who could give to the plaintiff their orders and who was superior to the plaintiff and whom the plaintiff was bound to obey, in the moving of said timbers one was caused by the gross and wanton carelessness of the defendant, its officers and agent to fall over and upon the plaintiff's left arm and hand crippling and destroying his hand and arm and so causing him great pain, mental and physical, and permanently injuring him so that he is a permanent cripple and he has thereby been damaged in the sum of $25,000.00."

There was no demurrer to the petition. The answer consisted of a traverse, a plea of assumption of risk and a plea of contributory negligence. The reply made up the issues. At the conclusion of the evidence for the plaintiff the railroad company moved for a peremptory instruction in its favor, but this motion was overruled and it excepted. Again at the conclusion of all the evidence the company moved for a directed verdict in its favor and this motion was overruled also, and exceptions saved. It also objected to the instructions given by the court to the jury, and when its objection was overruled, saved exceptions. It now insists that the averments of the petition were of general negligence, whereas it says that the only negligence attempted to be proven upon the trial was as to the method of doing the work. It also insists that appellee assumed the risk of being injured, as he knew and fully understood the nature of his employment, and was an experienced man in that line of work.

Appellee Hamblen was about fifty-four years of age at the time of the accident which resulted in his injury. He was employed as a laborer on the lumber yards of the railroad company located near its repair shops, in the city of Covington. He was one of a gang of eight or ten men who loaded and unloaded lumber in the yards for the company. The foreman was named Hicks. This lumber was used by the company in repairing its cars.

In it were pieces 5½ by 15½ inches in dimension and 36 feet long, which were used for car sills. These pieces weighed about 800 to 1,000 pounds. Next to the tracks was a shed in which were some small trestles commonly used by carpenters. When sills were needed these large timbers were loaded on the trestles and marked, cut and prepared to be used in the cars. It was the duty of the lumber yard crew to. lift these heavy timbers on to the trestles. They perform this service almost every day. Their method was to lift up one end at a time and place it on the trestles; then pick up the other end and lay it on the trestles. The timbers were stacked very near the trestles which were opposite the track. On the day of the injury the boss in the shops came out and requested the foreman of the lumber yard crew to place four sills on the trestles and told the foreman that it was an emergency job and requested him to be in a hurry. Following this order Hicks as foreman took his crew of eight or nine men over to the stack of sills for the purpose of putting four sills on the trestles. One of the sills lay flat on the ground next to the pile but not connected with the pile. Hicks, the foreman, took his position at one end of the sill where he could see what was going on; appellee Hamblen went to the other end of the sill. Four of the crew went alongside of the sill near the end at which Hamblen was, for the purpose of assisting in laying that end of the sill on to the trestle. Other workmen of the company were employed in the sheds where these trestles and sills were, and their work was stopped while the trestles were being laid up. When appellant took hold of the sill for the purpose of drawing it away from the pile the foreman said: "Pick it up, men, you have got everything stopped here," whereupon appellee Hamblen and four men near the end of the sill took hold of it and started to lift it up when the sill turned over and fell on the thumb of the left hand of appellee and mashed it severely. It is appellee's contention that this was a hurry-up job and that he and the crew did not have sufficient time to take their usual positions in laying up the sill and that by reason of all the men being on one side of the timber and lifting from that side alone it was caused to turn over and thus to fall on and mash his thumb. He testifies that it was the custom when loading sills on to the trestle for part of the men to get on one side of the sill and part on the other side, and he says that was a safer and better way to perform the work.

He does not state, however, that the foreman who was present directed the men to get upon one side of the sill or to get upon each side. The evidence does not show how high the sill had been raised at the time it turned over and fell. From the evidence we judge it had been raised only a slight bit. Appellee admits he was an experienced man at handling such timbers. He says he frequently worked at the job of placing sills upon the trestles. He also states how they had been handled before. Other men of the crew testified to the same effect. They all understood as well as the foreman how the work was performed. There was nothing unusual about the work or anything complicated or hard to understand. It was one of common, every-day affairs at the lumber yard. Every man of ordinary intelligence, about the yards, knew just how to put the sills on the trestles. It was as simple as laying a rail upon a fence or a heavy plank upon a stack of lumber.

If appellee has a cause of action against the railroad company it is because of the gross negligence of the foreman of the lumber crew in directing the work in such manner as to cause the injury of appellee. We have read the evidence carefully several times and are unable to discover wherein Hicks, the foreman, was negligent. He knew his crew and understood fully that each of them, including appellee Hamblen, was entirely familiar with the work, especially with that part of the work of laying sills on the trestles. They all confess they understood exactly how the work should have been done. He gave no directions to the crew which would have warranted them in changing that method, if indeed they did change it. He simply directed them to pick up one end of the sill and lay it on the trestle. This was a simple process. If, as contended by appellee Hamblen, it was the custom of the crew to divide, and a part of them lift from one side of the sill and the others from the opposite side, then this method should have been employed; but there was no order given by the foreman of appellant company warranting the crew, or appellee Hamblen, in departing from the usual custom in the method of loading the sills on the trestles. The foreman, no doubt, intended by his order for the crew to pick up the sill and place it on the trestle in the usual and ordinary way; and if in violation of that order appellee Hamblen and his fellow-workmen undertook to do the work in a way different from that usually employed in placing sills upon the trestles they

assumed all the risks of danger incident to the new system which they employed, and appellee Hamblen is not entitled to recover damages of appellant company. Although the fellow-servants may have been guilty of gross negligence, nevertheless he can have no recovery unless his superior, Hicks, the foreman, was also guilty of gross negligence, which was the proximate cause of his injury. Ohio Valley Coal & Mining Co. v. Heine, 159 Ky. 586; Louisville and Nashville R. R. Co. v. Foard, 104 Ky. 456; The Illinois Central R. R. Co. v. Mayes, 142 Ky. 382. Hamlen assumed all the ordinary risks of danger incident to the employment and which did not arise out of the negligence of his superior.

We have searched the record in vain for evidence of negligence on the part of the foreman of the crew, and in the absence of such evidence the trial court should have sustained the motion of appellant company for a directed verdict in its favor. Its failure to do so was error necessitating a reversal of the judgment.

Judgment reversed for proceedings not inconsistent with this opinion.